IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES B. GROSS,<br>MICHAEL B. GROSS,<br>MATTHEW E. GROSS,<br>LINDSAY D. GROSS,<br>THE CHARLES B. GROSS REVOCABLE TRUST, DATED MAY 16, 2012,<br>THE MICHAEL B. GROSS REVOCABLE TRUST, ESTABLISHED DECEMBER 1, 2015,<br>THE MATTHEW E. GROSS REVOCABLE TRUST DATED OCTOBER 30, 2012,<br><br>Defendants. | Case No.: |

## **COMPLAINT**

Liberty Mutual Insurance Company ("Liberty"), for its Complaint against Charles B. Gross; Michael B. Gross; Matthew E. Gross; Lindsay D. Gross; The Charles B. Gross Revocable Trust, dated May 16, 2012; The Michael B. Gross Revocable Trust, established December 1, 2015; and The Matthew E. Gross Revocable Trust dated October 30, 2012 (all defendants collectively referred to as the "Indemnitors"), states:

### **JURISDICTION AND VENUE**

1.      Liberty is a Massachusetts company with its home office and principal place of business in Boston, Massachusetts, and is deemed a citizen of the state of Massachusetts.  Liberty

is, and at all times mentioned herein was, qualified and authorized to transact business as a surety in the state of Missouri.

2.    Defendant Charles B. Gross ("Charles") is an individual residing in St. Louis, Missouri and is a citizen of the state of Missouri.

3.    Defendant The Charles B. Gross Revocable Trust, dated May 16, 2012 ("Charles' Trust") is a fiduciary trust created for estate planning purposes.

4.    Charles is the Trustee for Charles' Trust and is a citizen of the state of Missouri.

5.    Defendant Michael B. Gross ("Michael") is an individual residing in St. Louis, Missouri and is a citizen of the state of Missouri.

6.    Defendant The Michael B. Gross Revocable Trust, established December 1, 2015 ("Michael's Trust") is a fiduciary trust created for estate planning purposes.

7.    Michael is the Trustee for Michael's Trust and is a citizen of the state of Missouri.

8.    Defendant Matthew E. Gross ("Matthew") is an individual residing in Clayton, Missouri and is a citizen of the state of Missouri.

9.    Defendant The Matthew E. Gross Revocable Trust dated October 30, 2012 ("Matthew's Trust") is a fiduciary trust created for estate planning purposes.

10.    Matthew is the Trustee for Matthew's Trust and is a citizen of the state of Missouri.

11.    Lindsay D. Gross ("Lindsay") is an individual residing in St. Louis, Missouri and is a citizen of the state of Missouri.

12.    This controversy is between citizens of different states.

13.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.    Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332(a)(1).

15.     Venue is proper in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b) because all defendants are residents of the State of Missouri and the Eastern District of Missouri.

## GENERAL ALLEGATIONS

16.     Gross Mechanical Contractors, Inc. ("GMCI"), Gross Mechanical, Inc. ("GMI"), Pipe and Duct Systems, LLC ("PDS") and the Indemnitors, among others, executed a General Agreement of Indemnity ("Indemnity Agreement") in favor of Liberty as surety.  A true and correct copy of the Indemnity Agreement is attached hereto and incorporated herein as Exhibit 1.

17.     Paragraph 1: DEFINITIONS provides the definition of "Loss" as used in the Indemnity Agreement:

**Loss:**  any loss, fees, costs and expenses, including pre- and post-judgment interest at the maximum rate permitted by law, court costs, counsel fees, accounting, engineering and outside consulting fees, which Surety may sustain or incur or otherwise determine to pay in its sole and absolute discretion, by reason of: (a) a request for a Bond; (b) execution or procurement of a Bond, including any cost incurred by Surety in fulfilling its obligations under any Bond; (c) the failure of Indemnitors to comply with any covenants or conditions of this Agreement or Other Agreement; or (d) in enforcing any of the covenants and conditions of this Agreement or Other Agreements.

18.     Paragraph 4: INDEMNITY of the Indemnity Agreement requires the Indemnitors to exonerate, hold harmless, indemnify, and keep indemnified Liberty from all liability for Loss as defined therein:

**4. INDEMNITY:**     Indemnitors shall exonerate, hold harmless, indemnify, and keep Surety indemnified from all liability for Loss.  Indemnitors shall pay Surety for Loss promptly upon demand.  If Surety makes any Loss payment, Indemnitors agree that in any accounting between Surety and Principals, between Surety and Indemnitors, or either or both of them, Surety is entitled to recover from Indemnitors all disbursements made by it in good faith under the belief that it is or was or might be liable for the sums and amounts disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by Surety shall be prima facie evidence of the fact and amount of the liability to Surety.

3

19.     Paragraph 5: COLLATERAL of the Indemnity Agreement obligates the Indemnitors, on demand, to deposit money equal to the amount determined by Liberty as satisfactory to cover potential Loss:

> **5. COLLATERAL:**     Upon an Event of Default or determination by Surety that a potential Loss exists, Surety may demand that Indemnitors deposit a sum of money equal to an amount determined by Surety, or collateral security of a type and value satisfactory to Surety, to cover the Loss, whether or not Surety has: (a) established or increased any reserve; (b) made any Loss payment; or (c) received any notice of any claims therefor.  At Surety's sole option, this collateral may be in addition to and not in lieu of any other collateral, and Surety may make multiple demands for collateral.  Unless the Indemnitors and Surety Agree otherwise in writing, Surety shall have the right to use any collateral or any part thereof in payment or settlement of any liabilities for which Indemnitors would be obliged to indemnify Surety and Surety shall have no obligation to invest or to provide a return on any collateral provided.

20.     Paragraph 11: ATTORNEY IN FACT of the Indemnity Agreement provides that Liberty has the right and authority to act as the Indemnitors' attorney-in-fact to take specified actions as spelled out in the Indemnity Agreement:

> **11. ATTORNEY IN FACT:**     Indemnitors hereby irrevocably nominate, constitute, appoint and designate Surety as their attorney-in-fact, granting Surety the full right and authority, but not the obligation, to exercise all the rights of Indemnitors assigned, transferred and set over to Surety in this Agreement, including full power and authority to execute on behalf of and sign the name of any Indemnitor to: (a) any voucher, financing statement, release, satisfaction, check, bill of sale of all or any property assigned to the Surety by this Agreement or by any Other Agreement; and (b) any other documents or papers deemed necessary and proper by Surety to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be given to Surety under all other provisions of this Agreement. Indemnitors hereby ratify and confirm all acts and actions taken and done by Surety as such attorney-in-fact and agree to protect and hold harmless Surety for acts herein granted as attorney-in-fact.

21.     Paragraph 13: BOOKS AND RECORDS of the Indemnity Agreement provides that Liberty is entitled to reasonable access to inspect and copy the Indemnitors' financial information and that the Indemnitors will provide updated financial statements upon Liberty's request:

4

**13. BOOKS AND RECORDS:** Unless directed otherwise by Surety in writing, Indemnitors shall provide Surety financial statements prepared in accordance with Generally Accepted Accounting Principles, and reports prepared by reputable accounting firms prepared in accordance with the AICPA's Statements on Standards for Accounting and Review Services ("SARS") within 120 days of their fiscal year end. Reports prepared by reputable accounting firms in accordance with the AICPA's Statements on Auditing Standards in the ordinary course of their financial reporting, shall be supplied instead of reports in accordance with SARS, if available. Indemnitors shall provide internally prepared financial statements within 30 days of Surety request and any management letters received from their accountants within 30 days of receipt. Until Surety determines all liability under all Bonds is terminated or until it is fully reimbursed all amounts due to it under the Agreement or Other Agreements, Surety shall have the right of reasonable access to the books, records and accounts of Indemnitors for the purpose of inspection, copying or reproduction; and any financial institution, depository, materialman, supply house or other person, firm or corporation is hereby specifically authorized by each Indemnitor to furnish Surety upon request, any information requested. The Indemnitors agree to provide Surety with releases, requests, waivers or any other documents required to permit Surety access to the requested information. Furthermore, Indemnitors agree to provide Surety with any information requested regarding the status of any bonded or unbonded work, or any other information regarding the operations of the company, whether such requirements are in writing or otherwise.

22.     Paragraphs 20(d), 22(d), and 23(d) provide that the trustees of the defendant trusts "will provide to [Liberty] a schedule of the assets of the Trust within fifteen (15) days of [Liberty's] request."

23.     Paragraph 19: JOINT AND SEVERAL of the Indemnity Agreement provides that each indemnitor is jointly and severally liable under the Indemnity Agreement.

**19. JOINT AND SEVERAL:**    Each Indemnitor explicitly confirms its joint and several liability under the Bonds, this Agreement, Other Agreements or by operation of law or otherwise, and represents and warrants it is informed and remains informed of the business and financial affairs of each Principal and furthermore agrees that Surety has no obligation whatsoever to inform Indemnitors of information regarding the business activities and financial affairs of any Principal. Indemnitors waive notice of any default related to Bonds, this Agreement or other Agreements, or other act giving rise to any claim under any Bond, notice of liability of Surety under any Bond and any and all liability on Surety's part, to the end and effect that Indemnitors shall be and continue to be liable hereunder, notwithstanding any notice to which they might have been or be entitled and notwithstanding any defenses they might otherwise

5

have been entitled to make. Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution against each other until all obligations to the Surety under the Agreement, Other Agreements, and at law or in equity have been satisfied in full.

24. Paragraph 22: SUITS of the Indemnity Agreement provides that Liberty may bring separate suits against the Indemnitors and that there is no bar or prejudice to bringing of other suits.

> **22. SUITS:** Separate suits may be brought under this Agreement as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

25. Paragraph 23: JURISDICTION of the Indemnity Agreement provides that the Indemnitors consent to the jurisdiction of any court of competent jurisdiction:

> **23. JURISDICTION:** As to any legal action or proceeding related to this Agreement, Indemnitors consent to the general jurisdiction of any local, state or Federal court of the United States, its territories, and commonwealths having proper subject matter jurisdiction or in any court of the United States, its territories, or commonwealths in which any claim may be brought against Surety under any Bonds, and waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis. Indemnitors further waive personal service or any and all process.

26. In reliance upon the Indemnity Agreement, Liberty, as surety, provided among other types, fringe benefit and payment bonds on behalf of GMCI, GMI, and PDS ("Bonds"), including the following bonds:

   a. Fringe Benefit Bond No. 285023774, in favor of Plumbers' & Pipefitters' Welfare Educational Fund, as obligee, on behalf of GMI, as principal, in the penal sum of $185,000.00;

   b. Fringe Benefit Bond No. 39S221984.0, in favor of SMART Local 36 Benefits Funds, as obligee, on behalf of PDS, as principal, in the penal sum of $40,000.00;

   c. Fringe Benefit Bond No. 39S222272.0, in favor of Plumbers' & Pipefitters' Welfare Education Fund, as obligee, on behalf of PDS, as principal, in the penal sum of $310,000.00;

6

d. Payment Bond No. 674221176.1, in favor of Ben Hur Construction Company, as obligee, on behalf of PDS, as principal, in the penal sum of $252,713.00;

e. Payment Bond No. 39S224980, in favor of Ameresco, Inc., as obligee, on behalf of GMI, as principal, in the penal sum of $4,210,341.00.

27. As of December 10, 2025, Liberty received five claims against the Bonds totaling $920,093.63:

a. **Claim #1**
Obligee: Plumbers' & Pipefitters' Welfare Educational Fund
Bond: Fringe Benefit Bond No. 285023774
Principal: Gross Mechanical, Inc.
Amount Claimed/Penal Sum: $300,466.66/**$185,000.00**

b. **Claim #2**
Obligee: SMART Local 36 Benefits Funds
Bond: Fringe Benefit Bond No. 39S221984.0
Principal: Pipe and Duct Systems, LLC
Amount Claimed/Penal Sum: $208,276.50/**$40,000.00**

c. **Claim #3**
Obligee: Plumbers' & Pipefitters' Welfare Educational Fund
Bond: Fringe Benefit Bond No. 39S222272.0
Principal: Pipe and Duct Systems, LLC
Amount Claimed/Penal Sum: $802,625.12/**$310,000.00**

d. **Claim #4**
Obligee: Ben Hur Construction Company
Bond: Payment Bond No. 674221176.1
Principal: Pipe and Duct Systems, LLC
Claimant: Wholesale Plumbing and Supply Company
Amount Claimed/Penal Sum: **$151,142.52**/$252,713.00

e. **Claim #5**
Obligee: Ameresco, Inc.
Bond: Payment Bond No. 39S224980
Principal: Gross Mechanical, Inc.
Claimant: Brock Industrial Services
Amount Claimed/Penal Sum: **$233,951.11**/$4,210,341.00

28. On or about December 10, 2025, pursuant to the Indemnity Agreement, Liberty advised the Indemnitors of the Bond claims it had received and their respective obligation to exonerate, hold harmless and indemnify Liberty from those claims and demanded they provide Liberty with cash in the amount of $920,093.63 (which represented the total amount of the claims

7

received as of that date). A true and correct copy of Liberty's December 10, 2025 letter is attached hereto and incorporated herein as Exhibit 2.

29.    In its December 10, 2025 letter, Liberty also requested current financial statements from the Indemnitors and schedules of the assets of each of the defendant trusts.

30.    On or about March 12, 2026, Liberty updated Indemnitors on the status of the investigation of the claims on the Bonds, and advised that given the Indemnitors' failure to provide additional information or documents disputing the validity of the claims, Liberty would proceed to resolve them on the basis of the information that had been provided to Liberty. A true and correct copy of Liberty's March 12, 2026 letter is attached hereto and incorporated herein as Exhibit 3.

31.    The Indemnitors failed to exonerate, indemnify or provide any cash as demanded by Liberty.

32.    Some of the Indemnitors failed to produce updated information about their financial condition and assets, and no schedules of assets held by the defendant trusts have been provided.

33.    As of April 20, 2026, Liberty had paid $788,905.56 in claims and expenses as a result of claims made on the Bonds.

34.    Liberty will continue to incur Loss as defined in the Indemnity Agreement.

### COUNT I
(Breach of Indemnity Agreement)

35.    Liberty incorporates paragraphs 1 through 34 of its Complaint as if fully set forth herein.

36.    Pursuant to the Indemnity Agreement, the Indemnitors agreed to exonerate and indemnify Liberty from all liability for Loss.

37.    Liberty made demand upon the Indemnitors to comply with the terms and provisions of the Indemnity Agreement and exonerate and indemnify it for Loss incurred by reason

of having executed the Bonds on their behalf and in enforcing the Indemnitors' obligations under the Indemnity Agreement.

38.     The Indemnitors breached their agreement to exonerate and indemnify Liberty for Loss as required by the Indemnity Agreement.

39.     As of April 20, 2025, Liberty had paid $788,905.56 in Loss.

40.     Liberty will continue to incur Loss as a result of Liberty's provision of the Bonds, and the Indemnitors' failure to comply with the Indemnity Agreement.

41.     The sums sought by Liberty are for liquidated amounts which entitle Liberty to pre-judgment interest thereon from the respective dates of payment.

WHEREFORE, on Count I of its Complaint, Liberty prays for the following relief:

a.  Judgment against the Indemnitors jointly and severally for the sum of $788,905.56, the amount of Loss paid as of April 20, 2025, plus pre-judgment and post-judgment interest on those amounts from the respective dates of payment;

b.  Judgment against the Indemnitors jointly and severally for any additional Loss Liberty pays by reason of having executed the Bonds and in enforcing the Indemnity Agreement, plus pre-judgment and post-judgment interest on those amounts from the respective dates of payment; and

c.  For such other and further relief as the Court deems just and proper.

### COUNT II
(Specific Performance of Obligation Under the Written Indemnity Agreement)

42.     Liberty incorporates paragraphs 1 through 34 of its Complaint as if fully set forth herein.

43.     Despite Liberty's demand, the Indemnitors failed and refused to perform their obligation to collateralize Liberty under the Indemnity Agreement.

44.     The Indemnitors failed to provide any cash as demanded by Liberty and are in breach of their obligations under the Indemnity Agreement to do so.

9

45.     Pursuant to the Indemnity Agreement, the Indemnitors agreed to provide Liberty access to their respective books, records, and accounts as well as to provide certain financial information as requested.

46.     The Indemnitors failed to provide Liberty with the requested information about their financial condition and assets and are in breach of their obligations under the Indemnity Agreement to do so.

47.     The Indemnitors, individually and/or collectively, have the ability to perform and satisfy the obligations owed to Liberty pursuant to the Indemnity Agreement.

48.     The damage to Liberty resulting from the Indemnitors' breach of their obligations as set forth above is currently not ascertainable without the Indemnitors' financial records but, in any case, is no less than $920,093.63.

49.     Liberty has no adequate remedy at law because without compliance with the terms of the Indemnity Agreement, it will be denied the benefits of the Indemnity Agreement, remain unsecured for its obligations under the Bonds, remain exposed to yet unliquidated liability, and denied information and records to mitigate its loss, all to Liberty's irreparable harm.

50.     Liberty is entitled to an order requiring the Indemnitors to specifically perform their obligations to exonerate and hold harmless liberty for Loss by reason of Liberty's execution of the Bonds and Indemnitors' failure to comply with the Indemnity Agreement, provide Liberty with cash in the amount demanded, and provide the requested updated financial statements and information regarding their assets and financial conditions.

WHEREFORE, on Count II of its Complaint, Liberty prays for an order requiring the Indemnitors to specifically perform their obligations under the Indemnity Agreement by:

   a. Exonerating and holding harmless Liberty from Loss as defined in the Indemnity Agreement;

10

b. Providing cash to Liberty in an amount equal to at least $920,093.63 in accordance with the Indemnity Agreement;

c. Providing Liberty with updated financial statements, schedules of the assets of the trusts, and other documents and information regarding their respective assets and financial condition; and

d. Awarding Liberty such other and further relief as the Court deems just and proper.

Respectfully submitted,

DYSART TAYLOR McMONIGLE
BRUMITT & WILCOX, P.C.

By: */s/ Carol Z. Smith*
Carol Z. Smith, MO #37836
Matthew W. Geary, MO #53328
Maya J. Kapadia, MO #77239
700 W. 47th Street, Suite 410
Kansas City, Missouri 64112
Phone: (816) 931-2700
Fax: (816) 931-7377
*csmith@dysarttaylor.com*
*mgeary@dysarttaylor.com*
*mkapadia@dysarttaylor.com*

**ATTORNEYS FOR PLAINTIFF**
**LIBERTY MUTUAL INSURANCE COMPANY**